IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BOBBY RAY JONES,                    )
                                    )
              Petitioner,           )
                                    )
v.                                  )          Case No. CIV-07-1030-M
                                    )
THE STATE OF OKLAHOMA,[1]           )
                                    )
              Respondent.           )

## REPORT AND RECOMMENDATION

The Petitioner, Mr. Bobby Jones, is a state inmate requesting a writ of habeas corpus.

The Court should deny the request.

### BACKGROUND

Mr. Jones shot Mr. Angel Rodriguez,[2] who died as a result.[3]  After a jury trial, the

state district court:

- convicted Mr. Jones on a charge of first degree murder and imposed a sentence
  of life imprisonment without the possibility of parole[4] and

---

[1]     The Respondent seeks dismissal and substitution of Mr. Justin Jones as the proper respondent.  Response in Opposition to Petition for Writ of Habeas Corpus at p. 1 n.1 (Oct. 25, 2007) ("Response").  The Court need not address this request in light of the suggested denial of habeas relief.  *See infra* pp. 4-29.

[2]     *See* Transcript of Jury Trial Proceedings, Vol. 2 at pp. 282, 342, *State v. Jones*, Case No. CF-04-132 (Okla. Co. Dist. Ct. Mar. 28 - Apr. 1, 2005) ("Trial Transcript").

[3]     *See* Trial Transcript, Vol. 4 at pp. 680, 696-97.

[4]     *See* Trial Transcript, Vol. 5 at p. 955.

- convicted Mr. Jones of possession of a firearm after a former felony conviction and sentenced him to ten years imprisonment.[5]

The Oklahoma Court of Criminal Appeals ("OCCA") affirmed,[6] and the present action followed.

## STANDARD FOR HABEAS RELIEF

The applicable standard turns on whether the OCCA has addressed the merits of the claim. If not, the federal district court exercises its independent judgment on the issue. *See, e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002). If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For factual issues, the deference consists of habeas review solely to determine whether the state tribunal's findings were reasonable based on the evidence presented in the Oklahoma courts. *See* 28 U.S.C. § 2254(d)(2) (2000).

For legal issues, the deference involves restricted inquiry into whether the OCCA's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000). Thus, "an absolute prerequisite for petitioner's claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent." *Carter v. Ward*, 347 F.3d 860, 863 (10th Cir. 2003) (citation omitted); *see Parker v. Scott*,

---

[5]     *See* Trial Transcript, Vol. 5 at p. 963.

[6]     *Jones v. State*, Case No. F-2005-439 (Okla. Crim. App. Oct. 4, 2006) ("OCCA Opinion").

2

394 F.3d 1302, 1308-1309 (10th Cir. 2005) ("Even relevant precedent of this circuit cannot

prevail absent clear Supreme Court authority." (citations omitted)).

A decision is "contrary to" Supreme Court precedent only if the state court had

rendered an opinion dispositive of the claim.[7]  These circumstances may exist when the state

court had:

- applied a rule that conflicted with governing Supreme Court precedents or

- reached a conclusion different from the Supreme Court on materially
  indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted); *see also Bland v.*

*Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).[8]

A similar test governs the reasonableness of the state court's application of Supreme

Court precedent:

> [A] decision is "objectively unreasonable" when most reasonable jurists
> exercising their independent judgment would conclude the state court
> misapplied Supreme Court law.  It is not enough that the decision is clearly
> wrong or that the reviewing court would have reached a contrary decision.  In
> other words, . . . the state court decision must be "at such tension with

---

[7]     The Tenth Circuit Court of Appeals has quoted with approval the following principle: "'If
no Supreme Court precedent is *dispositive* of a petitioner's claim, then, a fortiori, there is no specific
rule to which the state court's decision can be contrary.'"  *Anderson v. Mullin*, 327 F.3d 1148, 1155
(10th Cir. 2003) (quoting *Vieux v. Pepe*, 184 F.3d 59, 63 (1st Cir. 1999) (emphasis in original)).

[8]     In *Bland v. Sirmons*, the Tenth Circuit Court of Appeals stated:  "It is not enough that the
state court decided an issue contrary to a lower federal court's conception of how the rule should
be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the
Supreme Court decision itself."  *Bland v. Sirmons*, 459 F.3d at 1009 (citation omitted).

governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable."[9]

## SUFFICIENCY OF THE EVIDENCE OF FIRST DEGREE MURDER
## GROUND TWO

Mr. Jones challenges the conviction for first degree murder, alleging insufficient evidence of malice aforethought. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at p. 5 (Sept. 17, 2007) ("Petition"). The Court should deny habeas relief on this claim.

## I.    The Applicable Test

When the sufficiency of evidence is challenged in a habeas action, the Supreme Court has held that the federal district court must "view[] the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). The state court obtains additional deference when it enters a finding on a sufficiency of the evidence claim. *See Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) ("the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) 'adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions'" (citation omitted)). The dispositive question "'is whether the OCCA's

---

[9]    *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (citation omitted); *see also Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1939 (2007) ("The question under [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - - a substantially higher threshold." (citation omitted)).

conclusion that the evidence was sufficient constituted an unreasonable application of the

*Jackson* standard.'" *Id.* (citation omitted).

II.     The OCCA's Holding

On direct appeal, the OCCA rejected the Petitioner's sufficiency of the evidence

claim, stating:

> We review the totality of the evidence, in a light most favorable to the State, to determine whether any rational trier of fact could find the elements of the offense of conviction beyond a reasonable doubt.  That standard is met here.   Because one's thoughts are rarely susceptible to proof by direct evidence, criminal intent is usually proven, if at all, circumstantially, i.e. by reasonable inferences made from direct evidence.   An intent to kill can be inferred from the circumstances surrounding the homicidal act, including the manner of death, words, conduct, demeanor, motive, and any other circumstance capable of proof.
>
> The only living eyewitness to the shooting was [Mr. Jones] himself, who did not testify.  Nevertheless, several witnesses who saw [Mr. Jones], immediately before and after the shooting, agreed that [Mr. Jones] was brandishing a gun, that he was angry, and that he sought out Rodriguez to settle some sort of dispute involving [Mr. Jones'] sister.  The victim was shot once in the middle of the forehead at relatively close range.  A rational trier of fact could have discounted [Mr. Jones'] claim of accident as self-serving and false.

OCCA Opinion at pp. 2-3 (citations omitted).

Because the OCCA rejected the claim on the merits, the federal district court should

apply the deferential test discussed above.  *See supra* pp. 4-5.

III.   Elements of First Degree Murder

In Oklahoma, first degree murder takes place when someone "unlawfully and with malice aforethought causes the death of another human being." Okla. Stat. tit. 21 § 701.7(A) (2004 supp.).

IV.   The Trial Evidence

Mr. Clint Carter testified that he was at a house when the Petitioner arrived with a .38 revolver "sticking out." Trial Transcript, Vol. 2 at pp. 267-68. Mr. Carter had previously seen Mr. Jones with this gun. *See id.* The Petitioner exited his vehicle, approached Mr. Carter, and "threw a punch." *Id.* at p. 271. Mr. Jones apparently believed that Mr. Carter and Angel Rodriguez had talked about raping the Petitioner's sister. *See id.* at pp. 330-31; Trial Transcript, Vol. 4 at p. 753. Mr. Carter testified that he was afraid because Mr. Jones had a "dangerous mind." Trial Transcript, Vol. 2 at p. 271.

Ms. Bonnie Hernandez was present during the altercation and provided similar testimony. *See id.* at pp. 326-31. Ms. Hernandez assured the Petitioner that the statements about his sister had been a "joke." *Id.* at p. 331. She instructed the Petitioner to clear up the situation with Angel Rodriguez, who was asleep inside the house. *See id.* The Petitioner walked toward the house and, according to Mr. Carter, said: "'[Y]ou're lucky I don't shoot you right now.'" *Id.* at p. 274.

Ms. Hernandez and Mr. Carter testified that they had heard a shot minutes after the Petitioner's entry into the house. *See id.* at pp. 281, 336. Mr. Jones then left the house, stating that he had shot Mr. Rodriguez. *See id.* at pp. 282, 342. The witnesses noted that Mr.

6

Jones seemed "horrified," like he was "going to faint." *Id.* at pp. 283, 342.  Ms. Hernandez found Mr. Rodriguez on the couch with a gunshot and asked the Petitioner to leave.  *See id.* at pp. 339, 346.

According to Ms. Troya Stevens, the Petitioner arrived at her home after the shooting and asked her to "hold" his revolver.  Trial Transcript, Vol. 3 at pp. 625, 627.  Ms. Stevens was familiar with Mr. Jones' revolver because he had often brought it to her house.  *Id.* at pp. 621-22.  According to Ms. Stevens, she knew that the Petitioner had always kept the gun loaded because the bullets were visible in the "spinner."  *Id.* at p. 624.  Ms. Stevens declined to keep the gun, and Mr. Jones drove away.  *See id.* at p. 625.  He was arrested in Mexico several weeks later.  *See* Trial Transcript, Vol. 4 at pp. 790-99.

Finally, a firearms expert testified that when a revolver is loaded, the bullets can be seen in the cylinder.  *See id.* at pp. 825-26.  Thus, when a revolver is properly held, the bullets are visible.  *Id.* at p. 826.

In the habeas petition, Mr. Jones contends that the State had lacked evidence of malice aforethought.  In the direct appeal, the Petitioner relied on testimony that Mr. Jones had appeared distraught after the shooting, said the gunshot was accidental, and denied knowledge that the gun was loaded.  Brief of Appellant at pp. 2, 6, *Jones v. State*, Case No. F-2005-439 (Okla. Crim. App. Dec. 22, 2005) (Petitioner's State Court Brief").  But the testimony also reflected that:

- Mr. Jones was angry and had acted violently to Mr. Carter;[10]

- the Petitioner believed that Mr. Rodriguez may have threatened to rape Mr. Jones' sister,[11] and animosity existed between the two men;[12]

- Mr. Jones had repeatedly asked Ms. Hernandez not to "tell" on him, adding that they were "family;"[13]

- the Petitioner attempted to dispose of the weapon and fled the country;[14] and

- Mr. Jones should have known that the gun was loaded because he could have seen the bullets in the revolver.[15]

The OCCA applied the *Jackson* standard and concluded that there was sufficient evidence of malice aforethought. *See supra* p. 5. The OCCA's analysis was reasonable under *Jackson* and the evidence. In these circumstances, the habeas claim should be rejected. *See supra* pp. 2-5.

### INEFFECTIVE ASSISTANCE OF COUNSEL
### GROUND THREE

Mr. Jones alleges ineffective assistance of counsel, stating that in *voir dire* his counsel had:

- disclosed a prior felony conviction,

---

[10]   *See supra* p. 6.

[11]   *See supra* p. 6.

[12]   *See* Trial Transcript, Vol. 3 at pp. 488-89.

[13]   Trial Transcript, Vol. 2 at pp. 343-44.

[14]   *See supra* p. 7.

[15]   *See supra* p. 7.

- made detrimental comments, and

- failed to assert objections.

Petition at p. 6; *see* Petitioner's State Court Brief at pp. 34-44.  The Court should reject these claims.

## I.    The Applicable Test

To establish ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  Mr. Jones bears a "heavy burden" to show deficiency in the representation.  *Cummings v. Sirmons*, 506 F.3d 1211, 1226 (10th Cir. 2007).  With this burden, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citation omitted).

As noted above, the alleged deficiencies involved actions taken during *voir dire*.  At this phase, an attorney's actions are generally considered "'matters of trial strategy.'"  *Hale v. Gibson*, 227 F.3d 1298, 1317 (10th Cir. 2000) (citation omitted).  To prevail on this type of issue, the Petitioner must prove that:

- the "strategic decision . . . [was] completely unreasonable, not merely wrong,"[16] and

---

[16]     *Romano v. Gibson*, 278 F.3d 1145, 1153 (10th Cir. 2002) (citations omitted).

- the attorney's decision must have been "so ill chosen that it permeate[d] the entire trial with obvious unfairness."[17]

## II.    Trial Counsel's Disclosure of Mr. Jones' Prior Felony Conviction

During *voir dire*, trial counsel asked the venirepersons whether they could fairly judge the Petitioner if they were told that he had a prior felony conviction. *See* Trial Transcript, Vol. 1 at pp. 132-39.[18] Mr. Jones alleges that trial counsel was ineffective for informing the venirepersons about the prior conviction.[19] But the OCCA determined that the inquiry could have involved "sound trial strategy,"[20] and this conclusion was reasonable.

At the time of *voir dire*, Mr. Jones had not yet decided whether to testify. *See id.*, Vol. 1 at p. 118;[21] *see also* Petitioner's State Court Brief at pp. 35-36 (acknowledging that at the time of jury selection, Mr. Jones had not yet decided whether to testify). If the Petitioner had

---

[17]    *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (citation omitted).

[18]    Before inquiring on the subject, the attorney said that he had talked to Mr. Jones about the question. Trial Transcript, Vol. 1 at p. 132.

[19]    The Respondent states that the attorney did not concede the existence of the felony conviction. Response at p. 17. This characterization is based on one exchange, when the attorney asked the venire to assume the existence of a prior felony conviction. *See* Trial Transcript, Vol. 1 at pp. 132-34. Later in jury selection, however, the attorney acknowledged that he had disclosed the prior conviction to the venire. *Id.* at p. 187.

[20]    OCCA Opinion at pp. 11-12 (footnote omitted).

[21]    The OCCA remarked that under state law, a criminal defendant can wait until the close of his case-in-chief to decide whether to testify. OCCA Opinion at pp. 11-12. This interpretation of state law is binding on habeas review. *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002).

testified, the prior felony conviction could have been considered admissible.  *See* Okla. Stat.

tit. 12 § 2609 (2004 supp.).

In these circumstances, trial counsel could reasonably have believed that he needed

to learn how the veniremen would react to the prior felony conviction.  The strategy appeared

to work, as one venireperson expressed strong disapproval of convicted felons carrying a

weapon[22] and trial counsel was able to issue a peremptory challenge for this individual.[23]

Based on these factors, the OCCA determined that trial counsel's tactics could have

represented sound trial strategy[24] and this conclusion was reasonable.  As a result, the federal

district court should deny habeas relief on his issue.  *See supra* pp. 2-5.

III.     Trial Counsel's Allegedly Detrimental Statements

Mr. Jones complains about his attorney's statements, which were allegedly

detrimental to the defense.  Petition at p. 6; *see* Petitioner's State Court Brief at pp. 39-40.

The Court should reject these claims.

A.     Comments Allegedly Reflecting Alignment with the State and Admission that
the Defense Did Not Want a Fair Trial

In *voir dire*, trial counsel made numerous comments, which Mr. Jones characterizes

as indicative of an alignment with the State.  These statements revealed the defense

---

[22]     *See* Trial Transcript, Vol. 1 at pp. 134-36.

[23]     *See* Trial Transcript, Vol. 1 at pp. 142-43.

[24]     *See supra* p. 10.

attorney's friendships with prosecutors,[25] police officers,[26] and the Assistant Commissioner of Public Safety.[27] Mr. Jones also complains about his attorney's remark that the defense did not want a fair trial. The actual statement was: "Everybody says we all want a fair jury. No, we don't. We want one that's going to vote our way. That's the honest-to-God truth." Trial Transcript, Vol. 1 at p. 78.

The OCCA considered these comments and held that counsel's statements involved "reasonable attempts to gain credibility with the jury, and nothing more." OCCA Opinion at p. 12. This assessment was a reasonable one,[28] and Mr. Jones has not alleged any facts to suggest that trial counsel's comments in *voir dire* were so ill chosen as to permeate the entire trial with obvious unfairness.[29] As a result, the habeas claim should be rejected.

B.    Questions that Were Allegedly Detrimental to the Defense Theory

During *voir dire*, one venireman stated that he was experienced with guns. Trial Transcript, Vol. 1 at p. 108. He added examples of advice given by his father: "Don't carry a - - keep your trigger - -  don't put your finger on the trigger. Keep it on safe. Don't store

---

[25]    Trial Transcript, Vo1. 1 at p. 78.

[26]    Trial Transcript, Vol. 1 at p. 93.

[27]    Trial Transcript, Vol. 1 at p. 120.

[28]    *See Turrentine v. Mullin*, 390 F.3d 1181, 1205 (10th Cir. 2004) (rejecting a habeas claim of ineffective assistance because the OCCA had reasonably viewed counsel's admission as a strategic decision to bolster his credibility); *accord Clozza v. Murray*, 913 F.2d 1092, 1098-99 (4th Cir. 1990) (holding that counsel was not ineffective by making negative comments, as he was trying to establish credibility with the jury).

[29]    *See supra* pp. 9-10.

a loaded gun, things like that, and an empty gun is always the most dangerous."  *Id.*  Trial

counsel then asked why the venireman regarded an empty gun as the most dangerous.  *Id.* at

p. 109.  He responded:  "When you think it's unloaded, most likely somebody's going to get

killed."  *Id.*

In the direct appeal, the Petitioner suggested that this exchange had undermined the

defense theory of an accident.  Petitioner's State Court Brief at p. 39.  But this assessment

was not the only reasonable one.  Trial counsel could reasonably have wanted to explore the

venirepersons' opinions about guns to predict their reactions to an accident theory.  Indeed,

after hearing the remarks about gun safety, the attorney struck the venireman with a

peremptory challenge.  Trial Transcript, Vol. 1 at p. 19.  Consequently, even without

consideration of the OCCA opinion,[30] the federal district court should reject habeas relief

based on the absence of a deficiency in the legal representation.[31]

C.    Comments Which Allegedly Misstated the Law to the State's Benefit

In his appeal brief, Mr. Jones also expressed displeasure with the attorney's discussion

about the scales of justice.  Petitioner's State Court Brief at p. 40.  Because the Petitioner is

*pro se* and attached the brief to his habeas petition, the Court should liberally construe the

---

[30]     The OCCA did not squarely address the allegation of ineffective assistance based on this line
of questioning.  *See* OCCA Opinion at p. 12.  As a result, the federal district court can assume
*arguendo* that it should independently consider the present habeas claim without deference to the
OCCA's disposition.  *See supra* p. 2.

[31]     *See supra* p. 9.

passage as a separate theory of ineffective assistance based on misstatement of the burden of proof. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*).

In the passage at issue, the attorney was addressing the ability of the venirepersons to listen to the evidence with an open mind. Trial Transcript, Vol. 1 at p. 179. The attorney then engaged in this exchange with one individual:

> [TRIAL COUNSEL]:  I don't know if this courtroom has the scales of justice. Everything's supposed to be even until things tip it.  The State's evidence can tip the scales of justice against the defendant.  Do we walk in with the scales tipped against the defendant?  Do we start out down?  Talk about football.
>
> [VENIREPERSON]:  With football, yes, it's possible.
>
> [TRIAL COUNSEL]:  Okay.  Do you think that we may have to overcome something?  Let me try to figure out how to say that.  When you say it's possible, you would see my concern, correct, that that has already influenced you.  As he sits right there, do you presume him innocent?  Do you believe he's innocent?
>
> [VENIREPERSON]:  Yes.

*Id.*

Even without deference to the OCCA,[32] the federal district court should conclude that the attorney's comment did not entail a deficiency in the legal representation.  In the colloquy and afterward, the attorney reminded the venireman of the presumption of innocence.  *Id.* at pp. 179, 181.  Using its independent judgment,[33] the federal district court should conclude

---

[32]     *See supra* note 30.

[33]     *See supra* p. 2.

that the imagery of the scales of justice did not entail a deficiency in the legal representation.

*See Bowling v. Parker*, 344 F.3d 487, 513 (6th Cir. 2003).[34]

IV.     Trial Counsel's Failure to Object to Alleged Errors in *Voir Dire*

The Petitioner also blames his trial counsel for failure to object to statements by the

prosecutor and trial judge during *voir dire*.  Petition at p. 6.  Habeas relief is unwarranted on

these claims.

A.      Failure to Object to Prosecutorial Misconduct

The OCCA reasonably concluded that there was no prosecutorial misconduct during

*voir dire*.  *See infra* p. 18.  Thus, regardless of whether defense counsel had objected, the

OCCA would ultimately have rejected the argument.  In these circumstances, the Petitioner

cannot demonstrate ineffective assistance based on the failure to object to prosecutorial

misconduct.  *See Miller v. Mullin*, 354 F.3d 1288, 1296 & 1299 (10th Cir. 2004) (*per

curiam*);[35] *see also Massingale v. Cody*, 61 F.3d 916, 1995 WL 434832, Westlaw op. at 1

---

[34]     In *Bowling v. Parker*, an attorney analogized the presumption of innocence to driving an automobile with standard transmission.  *See Bowling v. Parker*, 344 F.3d at 513.  The attorney explained that the jury was effectively "in neutral," waiting to determine which way it would go until it heard the evidence.  *See id*.  On appeal, the issue was whether the analogy negated the presumption of innocence.  *See id*.  The federal appeals court answered in the negative, pointing out that the attorney was simply "trying to make sure that the jury began the trial without presuppositions about the case."  *Id*.  In arriving at this conclusion, the court noted out that the attorney had stated only moments earlier that the defendant was innocent until proven guilty.  *Id*.

[35]     In *Miller v. Mullin*, a petitioner sought habeas relief based in part on the prosecutor's use of transparencies and defense counsel's failure to object.  *See Miller v. Mullin*, 354 F.3d at 1293-95, 1297.  In upholding the denial of habeas relief, the Tenth Circuit Court of Appeals held that the state appellate court had reasonably applied federal law in holding that use of the transparencies did not constitute plain error.  *Id*. at 1296.  Because the transparencies did not involve plain error, the petitioner could not establish a reasonable probability of acquittal if his attorney had lodged a timely

(10th Cir. July 25, 1995) (unpublished op.) ("Because there was no error committed by allowing evidence of [the habeas petitioner's] prior record at the sentencing phase of his trial before the jury, it follows *a fortiori* that trial counsel was not ineffective in failing to exclude this evidence . . . ." (citation omitted)).

B.    Failure to Object to the Trial Court's Alleged Errors

Mr. Jones also complains that the trial court had improperly questioned the venire and confused two potential jurors.[36]  According to the Petitioner, trial counsel was ineffective for failure to object to the questions.  Petition at p. 9; *see supra* note 36.

The OCCA rejected the claim, observing that the trial court's questions were "entirely proper" and that the two venirepersons allegedly confused did not sit on the jury.  OCCA Opinion at p. 12.  Consequently, the OCCA found no deficiencies in trial counsel's performance.  *See id.*  This conclusion was reasonable.

The record does not support the Petitioner's claim that the trial court had confused two venirepersons.  *See* Trial Transcript, Vol. 1 at pp. 153-59.  But even if the individuals had been confused, they did not sit on the jury.  *See id.* at pp. 155, 190.  Under these

---

objection.  *Id.* at 1299.

[36]    In the habeas petition, Mr. Jones complains of his attorney's failure to object to "the trial court's improprieties."  Petition at p. 6.  For the supporting facts, Mr. Jones refers to his attachments.  *Id.*  ("See Attachment's [sic] for the rest of grounds & facts").  One attachment is his appeal brief.  Petition, Attachment.  There Mr. Jones complained about the trial judge's questioning of the two venirepersons.  Petitioner's State Court Brief at pp. 40-44.

circumstances, Mr. Jones has not established prejudice from the lack of an objection to the trial judge's questions.

Mr. Jones also argues that his attorney should have objected when the trial judge oversimplified the legal issues. Petition at p. 6; *see supra* p. 15. The relevant comments followed one venireperson's apparent inability to distinguish between an "accident" and "carelessness." The exchange was:

> [VENIREPERSON]: I just don't believe in accidents. I feel like that they're not accidents; they're caused by carelessness. I'm sorry.
>
> TRIAL COURT: That's okay. As I got this from - - from listening to the lawyers, okay, and reading between the lines, and I'm sure everyone else has, [the State] say[s] he did it on purpose, okay. [The defense] say[s] it went off by accident. And you have to pick.
>
> [VENIREPERSON]: I don't think that there's an accident.
>
> TRIAL COURT: Okay.
>
> [VENIREPERSON]: I mean I think even when people say they have a car accident, it's not an accident. It's caused by carelessness.
>
> TRIAL COURT: Okay.
>
> [VENIREPERSON]: A kid pushes over the milk at dinner, it's not an accident. They were reaching across the table.
>
> TRIAL COURT: Okay. Let's do - - let me rephrase it then.
>
> [VENIREPERSON]: All right.
>
> TRIAL COURT: [The State] say[s] it was on purpose. [The defense] say[s] it was carelessness, okay? And those are different things. [The State's] saying with malice aforethought, that he did what he intended to do, which was to shoot this man and to kill him, and [the defense] say[s] it was through

> carelessness or whatever. [The defendant] didn't intend to do it and that seems
> to be the issue from this.

Trial Transcript, Vol. 1 at pp. 153-55.

The trial judge did not misstate the arguments. In opening statements and closing arguments, the prosecutor asserted that the shooting was intentional and the Petitioner characterized the gunfire as accidental. *See* Trial Transcript, Vol. 2 at pp. 239-61; Trial Transcript, Vol. 5 at pp. 863-91, 895-942. The trial court accurately summarized these theories to the venire. Mr. Jones' attorney had no legitimate reason to object, and his failure to do so cannot be considered deficient.

## PROSECUTORIAL MISCONDUCT
## GROUND EIGHT

Mr. Jones claims prosecutorial misconduct in *voir dire* through improper legal instruction and misstatement of the law. Petition at pp. 9-10. The OCCA rejected these allegations,[37] and this determination was reasonable.

I.      Standard for Habeas Relief on Claims Involving Prosecutorial Misconduct

In considering a habeas claim involving prosecutorial misconduct, the Court must determine whether a constitutional violation has taken place "which so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994) (citation omitted). If a prosecutor has acted improperly, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of

---

[37]      OCCA Opinion at pp. 9-10.

the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (citations omitted). In conducting this inquiry, the Court should view the prosecutor's statements in context, considering "whether the prosecutor's statements plausibly 'could have tipped the scales in favor of the prosecution.'" *Fero v. Kerby*, 39 F.3d at 1474 (quoting *Hopkinson v. Shillinger*, 866 F.2d 1185 (10th Cir. 1989)).

II.    The Prosecutor's Alleged Instruction and Misstatement of the Law

According to Mr. Jones, the prosecutor infringed upon the trial court's duties when she instructed on the law of malice aforethought during *voir dire*. Petition at p. 9. The Petitioner also argues that the prosecutor had confused the jury because "premeditat[ion]" and "malice aforethought" were "closely equivalent." *Id.* at p. 10. On direct appeal, the OCCA viewed the prosecutor's comments in context and found no error. OCCA Opinion at pp. 9-10. The court noted:

> The prosecutor reminded the panel that the court would instruct on the elements of the offense. [The prosecutor] made it clear that the State had to prove a "deliberate intention of taking a human life." The prosecutor contrasted the layperson's natural connotation of the term "premeditation," which is not itself an element of First Degree Murder, with the legal definition of "malice aforethought," which is.

*Id.* at p. 9 (citing OUJI-CR 4-62 (2d ed.)).

The OCCA's determination constituted a reasonable application of federal law. The State had the burden to prove an intent to kill. *See supra* p. 6 (elements of first degree murder). This element does not require advance planning,[38] which inheres in the lay

---

[38]    *See* OUJI-CR 4-62 (2d ed.) (stating that for "malice aforethought," "[t]he intent may have

understanding of "premeditation."[39] Thus, the prosecutor's comments were accurate,[40] and Mr. Jones cannot show infection of "the trial with unfairness as to make the resulting conviction a denial of due process."[41]

## INTRODUCTION OF UNFAIRLY PREJUDICIAL EVIDENCE
## GROUND ONE

The Petitioner alleges that the trial court had allowed the jury to see guns unrelated to the charges. Petition at p. 5. According to Mr. Jones, this evidence was unfairly prejudicial. *Id.* The OCCA reasonably rejected this claim. OCCA Opinion at p. 8.

Mr. Jones can obtain habeas relief only if introduction of the evidence had resulted in a fundamentally unfair trial.[42]

---

been formed instantly before commission of the act"); *Coddington v. State*, 142 P.3d 437, 456 (Okla. Crim. App. 2006) ("Malice, the deliberate intention to take the life of another without justification, may be formed in an instant." (citation omitted)).

[39]    *See State v. Patton*, 102 P.3d 1195, 1200 (Kan. Ct. App. 2004) (stating that "[t]he commonly understood definition of 'premeditation' . . . requires a party to form the design or intent to kill in advance"); *Godwin v. State*, 382 A.2d 596, 607 (Md. Ct. Spec. App. 1977) ("A layman's understanding of 'premeditation' would be something that requires an appreciable length of time . . . ."), *vacated on other grounds*, 403 A.2d 785 (Md. 1978).

[40]    *See supra* p. 19.

[41]    *See supra* p. 18.

[42]    *See supra* pp. 18-19; *see also Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001) ("[a]s a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal courts may not interfere with state evidentiary rulings unless . . . [they] rendered 'the trial so fundamentally unfair as to constitute a denial of federal constitutional rights'" (citations omitted)).

To rebut the Petitioner's accident theory, the prosecutor attempted to prove Mr. Jones' familiarity with guns. *See* Trial Transcript, Vol. 4 at pp. 704-706. For that purpose, the prosecutor called someone to testify that he had bought three guns from Mr. Jones. *See id.* During the direct examination, the court admitted the guns into evidence. *Id.* at pp. 710-12. But the witness did not say whether Mr. Jones had displayed familiarity with the guns. *See id.* at pp. 707-13. Consequently, the trial court:

- reversed its prior ruling and excluded the guns and

- admonished the jury to disregard the evidence.

*See id.* at pp. 724, 727-29, 746-47. With these actions, the jury's exposure to the guns did not result in a fundamentally unfair trial.

Under Oklahoma law, evidence of uncharged behavior may be admissible to prove that a particular act was not accidental. *See* Okla. Stat. tit. 12 § 2404(B) (2001). Conceivably, the prior gun sales could have suggested that Mr. Jones would have known if the murder weapon had been loaded. *See United States v. Garner*, 396 F.3d 438, 443 (D.C. Cir. 2005).[43] The trial court ultimately held that the testimony was inadmissible and:

---

[43]     In *United States v. Garner*, the defendant was charged with unlawful possession of a firearm. *See United States v. Garner*, 396 F.3d at 439. At trial, the court admitted evidence of a prior episode in which the defendant had a gun under a vehicle seat and an ammunition clip in his jacket. *See id.* at 440. The federal appeals court upheld introduction of the evidence, reasoning that the earlier episode increased the likelihood that the defendant "was in knowing possession of the loaded handgun." *Id.* at 444.

- instructed the jury to disregard the entirety of the testimony about the purchase of guns[44] and

- reversed a prior ruling and excluded the guns previously introduced during the testimony.[45]

As noted above, the prior gun sales were arguably relevant to Mr. Jones' theory of an accident. *See supra* p. 21. But the trial judge ultimately excluded the weapons and instructed the jury to disregard the entirety of the testimony. *See supra* pp. 21-22. The OCCA assumed that the jury had followed the instruction,[46] and this assumption was reasonable in light of Supreme Court precedents[47] and the state court record.[48] Thus, introduction of the evidence involving the gun sales would not justify habeas relief.[49]

---

[44]  Trial Transcript, Vol. 4 at p. 747.

[45]  Trial Transcript, Vol. 4 at p. 727.

[46]  OCCA Opinion at p. 9.

[47]  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions." (citation omitted)).

[48]  After the trial judge announced the verdict, he asked each juror whether the sight of the guns had affected his verdict or assessment of punishment. Trial Transcript, Vol. 5 at p. 964. All of the jurors responded in the negative. *Id*. at p. 965.

[49]  *See Duvall v. Reynolds*, 139 F.3d 768, 788 (10th Cir. 1998) ("[t]his court, . . . as well as other circuits, has found that the improper admission of evidence of prior acts does not rise to the level of constitutional error if the trial judge later instructs the jury to disregard the evidence" (citations omitted)).

ERRORS IN THE JURY INSTRUCTIONS
GROUND SEVEN

Mr. Johnson also urges relief based on error in the jury instructions.  Petition at p. 7.

According to the Petitioner, the trial court:

- should not have instructed on first degree murder or first degree "heat of passion" manslaughter,

- should have instructed on other lesser-included offenses, and

- confused the jury with a "random" instruction on "criminal intent."

*Id.*; *see also* Petitioner's State Court Brief at pp. 15-22.  These allegations lack merit.

I.    Standard for Relief Involving Alleged Jury Instruction Errors

Generally, errors relating to jury instructions do not support federal habeas relief "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted).  Thus, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation omitted).  The Petitioner bears a heavy burden to establish constitutional error based on an erroneous jury instruction. *See Nguyen v. Reynolds*, 131 F.3d at 1357.

II.    Instructions on First Degree Murder and First Degree "Heat of Passion" Manslaughter

In the habeas petition, Mr. Jones complains of instructions on homicide offenses without support in the evidence.  Petition at p. 7.  The allegation was amplified in the direct appeal.  There Mr. Jones challenged the instructions for first degree murder and first degree

23

"heat of passion" manslaughter on grounds that the evidence had not supported either crime. Petitioner's State Court Brief at pp. 15-17.  But sufficient evidence existed on first degree murder,[50] and the court did not convict Mr. Jones of first degree "heat of passion" manslaughter.[51]   *A fortiori*, the Petitioner cannot establish error in the existence of instructions on murder or "heat of passion" manslaughter.

III.     Failure to Give Other Lesser Included Instructions

The Petitioner next complains that the trial court did not instruct on certain lesser-included offenses.  Petition at p. 7.  The claim is invalid.  Because the trial court did not instruct on the death penalty,[52] the federal constitution did not require a jury charge on lesser-included offenses.[53]

IV.     Instruction on General Intent

Finally, Mr. Jones complains that the trial court had confused the jury by instructing on general intent.  Petition at p. 11; *see* Petitioner's State Court Brief at p. 21.  The OCCA concluded that the general intent instruction was irrelevant.  OCCA Opinion at p. 7.

---

[50]     *See supra* p. 8.

[51]     *See supra* pp. 1-2.

[52]     *See* Instructions to the Jury No. 20, *State v. Jones*, Case No. CF-04-132 (Okla. Co. Dist. Ct. Apr. 1, 2005) (stating that first degree murder is punishable by life imprisonment or life without the possibility of parole).

[53]     *See Tiger v. Workman*, 445 F.3d 1265, 1268 (10th Cir. 2006) (rejecting a habeas claim because neither the Supreme Court nor the Tenth Circuit Court of Appeals has recognized a federal constitutional right to a lesser-included offense instruction in non-capital cases); *Lujan v. Tansy*, 2 F.3d 1031, 1036-37 (10th Cir. 1993) ("a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction 'even if . . . there was sufficient evidence to warrant the giving of an instruction on a lesser included offense'" (citations omitted )).

Nevertheless, the OCCA pointed out that the jury could not have been confused because the trial judge had accurately defined the necessary intent. *Id.* This conclusion reflected a reasonable application of Supreme Court precedents,[54] and Mr. Jones cannot obtain habeas relief on this basis.

IMPOSITION OF MULTIPLE PUNISHMENT
GROUND FOUR

Mr. Jones claims that he has been punished twice for the same offense. Petition at p. 6. According to the Petitioner, the same course of conduct was implicated in the charges involving first degree murder and possession of a firearm after a former felony conviction. *Id.* The OCCA addressed this claim on the merits and rejected it. OCCA Opinion at pp. 3-4. This disposition was reasonable under existing Supreme Court precedents.

The Petitioner relies on the double jeopardy clause in the federal constitution. Petition at p. 6.[55] The federal double jeopardy clause prohibits "multiple punishments for the same

---

[54]    *See Johnson v. Gibson*, 254 F.3d 1155, 1162-63 (10th Cir. 2001) (the OCCA's determination that jury instructions were proper, despite the giving of instructions on both general intent and specific intent, was not contrary to or an unreasonable application of clearly established Supreme Court precedent); *see also Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003) (habeas relief was not warranted on a claim that the Oklahoma trial court had instructed on both general intent and the specific intent necessary for "malice aforethought" murder).

[55]    In the direct appeal, Mr. Jones had also relied on Okla. Stat. tit. 21 § 11(A). Petitioner's State Court Brief at pp. 13-14. But violation of this law would not entitle Mr. Jones to federal habeas relief. *See Howell v. Kaiser*, 36 Fed. Appx. 925, 926-27 (10th Cir. Jan. 24, 2002) (unpublished op.) (holding that violation of Okla. Stat. tit. 21 § 11(A) "is not cognizable in a federal habeas action"), *see also Winkleman v. Reynolds*, 16 F.3d 418, 1993 WL 528020, Westlaw op. at 2 (10th Cir. Dec. 22, 1993) (unpublished op.) ("Whether the interpretation by the Oklahoma courts of [Okla. Stat. tit. 21 § 11] is correct or not is a matter of state law that is not actionable in a habeas proceeding." (citation omitted)).

offense." *Brown v. State of Ohio*, 432 U.S. 161, 165 (1977) (citations omitted).  Under Supreme Court precedents, the sole issue is whether the sentencing court had intended to allow cumulative punishments.  *See Missouri v. Hunter*, 459 U.S. 359, 365 (1983).  If the legislature had intended to punish the conduct as distinct offenses, separate sentences would be constitutionally permissible.  *See*, *e.g.*, *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 778 (1994).  In determining whether a state legislature had intended to prescribe cumulative punishments for a single criminal incident, this Court is "bound by a state court's determination of the legislature's intent." *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Birr v. Shillinger*, 894 F.2d 1160, 1161-62 (10th Cir. 1990) (*per curiam*) (citations omitted).

Mr. Jones, a prior convicted felon, committed a murder in the process of possessing a gun. *See supra* pp. 1-2.  The Petitioner argues that he should not be punished for both acts, as they involved parts of the same criminal transaction.  Petition at p. 6; *see supra* p. 25.  The OCCA disagreed, reasoning that the legislature had "intended to punish convicted felons for merely possessing a firearm, separately from and cumulatively to any other offense they might then commit with that firearm."  OCCA Opinion at pp. 3-4.

The federal district court is bound by the OCCA's interpretation of the legislature's intent. *See supra* p. 26.  Consequently, on habeas review, the federal district court should

26

conclude that the OCCA's disposition of the issue was reasonable under Supreme Court precedent.[56]   In these circumstances, the federal district court should hold that no double jeopardy violation had taken place when Mr. Jones obtained dual punishments for first degree murder and possession of a firearm after a prior felony conviction.[57]

EXCESS IN THE SENTENCE
GROUND SIX

The state district court convicted Mr. Jones on one count of first degree murder and one count of possession of a firearm after a former felony conviction, imposing life without the possibility of parole and imprisonment for ten years.  *See* Petition at p. 1; *see also supra* pp. 1-2.  The Petitioner argues that the sentence was excessive without greater evidence of an intent to kill.  Petition at p. 8.  The OCCA rejected the claim and concluded that "[u]nder the circumstances of this case," the sentence was not "shocking to the conscience."  OCCA's Opinion at p. 13.  This determination was reasonable.

For this claim, Mr. Jones must show that the sentence was grossly disproportionate to the offenses.  *See Hawkins v. Hargett*, 200 F.3d 1279, 1282 (10th Cir. 1999).  The relevant factors include the seriousness of the crimes and the legislative determination of appropriate

---

[56]     *See Dennis v. Poppel*, 222 F.3d 1245, 1256-57 (10th Cir. 2000) (holding that the OCCA's rejection of a double jeopardy claim was reasonable, for purposes of habeas review, based on the legislature's intent to permit cumulative punishments and Supreme Court authority that both penalties may be imposed in a single proceeding).

[57]     *See Mooney v. Workman*, Case No. CIV-01-1404-HE, slip op. at pp. 8-10 (W.D. Okla. July 5, 2002) (unpublished report and recommendation by magistrate judge, concluding that cumulative punishment in Oklahoma for malice murder and robbery with a dangerous weapon did not create a double jeopardy violation), *adopted* (W.D. Okla. Nov. 27, 2002) (unpublished order by district judge).

sentence ranges.  *See id.* at 1284-85 (discussing the seriousness of the crime and the legislative determination of an appropriate range).  Under these factors, a sentence is only rarely considered grossly disproportionate to the offense.[58]

Two pertinent factors support the OCCA's conclusion that the sentence was reasonably proportionate to the crimes:

- The offenses involved the killing of a person and carrying of a firearm after a prior felony conviction[59] and

- the terms of ten years and life without the possibility of parole fell within the statutory sentence ranges.[60]

In light of these factors, the OCCA's rejection of the constitutional claim was reasonable under Supreme Court precedent.  *See United States v. Gourley*, 835 F.2d 249, 253 (10th Cir. 1987) (holding that a life sentence for possession of a firearm after a felony conviction was not disproportionate to the offense for purposes of the Eighth Amendment).

---

[58]    *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."); *see also United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) ("Although the Supreme Court has reviewed Eighth Amendment challenges to a number of state and federal sentences, it has struck down only two of them over the past century.").

[59]    *See supra* pp. 1-2.

[60]    *See* Okla. Stat. tit. 21 § 701.9 (2001) ("A person who is convicted of . . . murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life."); Okla. Stat. tit. 21 § 1284 (2001) (stating that for possession of a firearm after a former felony conviction, the sentencing range is one to ten years).

CUMULATIVE ERROR
GROUND FIVE

Finally, the Petitioner seeks federal habeas relief based on cumulative error.  Petition at p. 8.  This claim should be rejected.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004).

To count, each error must involve a violation of the federal constitution rather than state law.[61]  "'Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors.'"  *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (citation omitted).

The Petitioner has not shown two or more constitutional errors.  *See supra* pp. 4-28. Thus, the Court should decline to grant habeas relief based on cumulative error.

RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends denial of the request for a writ of habeas corpus.

---

[61]     *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted."); *Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial." (citation omitted)).

The Petitioner can object to this report and recommendation.  To do so, Mr. Jones must file an objection with the Clerk of this Court.  The deadline for objections is February 13, 2008.  *See* W.D. Okla. LCvR 72.1.  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## STATUS OF THE REFERRAL

The referral is terminated.

Entered this 24th day of January, 2008.


Robert E. Bacharach
United States Magistrate Judge